Charles Lindberg **LORRAINE**, #27363,
Petitioner,

v.

**C. T. GLADDEN, Warden, Oregon State
Penitentiary, and Oregon State Parole
Board, Respondents.**

**Civ. No. 66–61.**

United States District Court
D. Oregon.

Dec. 14, 1966.

Alan D. Gross, Salem, Or., for petitioner.

Robert Y. Thornton, Atty. Gen. for Oregon, and David H. Blunt, Asst. Atty. Gen. for Oregon, Salem, Or., for respondents.

OPINION

SOLOMON, Chief Judge.

■ Petitioner seeks to set aside a conviction and sentence of 25 years imprisonment imposed on July 18, 1960, by the Circuit Court of the State of Oregon for Linn County upon petitioner's plea of guilty to "assault and robbery, being armed with a dangerous weapon." After exhausting his State remedies under the Oregon Post-Conviction law and after an evidentiary hearing in this Court, petitioner was released on parole by the Oregon Parole Board. Petitioner desires to continue these proceedings in spite of the hazards of a retrial if he succeeds here. Accordingly, the Oregon State Parole Board, which has supervision over petitioner, is added as a party. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

Petitioner contends that his Federal Constitutional rights were violated because, while unrepresented, his plea of guilty was induced by the District Attorney's promised recommendation of leniency and by the threat of a mandatory life sentence, not only for him but also for a codefendant.

On July 14, 1960, a Halsey, Oregon, bank was held up by two men. A short time later, petitioner called the State Police and stated that he had been kidnapped and had been forced to drive to an outlying location by a man who had been seen coming from the bank. After a brief investigation and the arrest of Leo Eldon Harris, the other man, petitioner was arrested because the authorities did not believe his story. Petitioner and Leo Harris were both charged with assault and robbery, being armed with a dangerous weapon, which under State law carries a mandatory life sentence unless the sentencing court finds cause for leniency.

On the following morning, July 15, 1960, petitioner was brought before a State District Judge for arraignment. In the afternoon, while unrepresented by counsel, petitioner was visited several times by a county prosecutor, to whom petitioner persisted in his statements that he had been kidnapped. The prosecutor threatened to file a kidnapping charge against Harris and pointed out the hazard of a possible mandatory life penalty under Oregon law if petitioner was convicted of the pending charge. In addition, the prosecutor told petitioner that the Federal authorities were anxious to obtain custody over him and asked if he would prefer being tried locally by the State or in Portland by Federal authorities. The prosecutor promised to recommend leniency if petitioner would plead guilty. After further talks with petitioner and his codefendant, the prosecutor called the Circuit Judge and arranged for an evening court session. The prosecutor anticipated the appointment of counsel for the petitioner and arranged for the presence of a local attorney who earlier in the day had conferred with Harris.

That evening, when the Court session opened, the Circuit Judge appointed the same attorney to represent both defendants. He was the attorney whom the prosecutor had called earlier. When the appointed attorney announced that he had not talked to petitioner, the judge permitted the two defendants to talk with the attorney in the courtroom. After a conference, which took only a few minutes, each defendant waived indictment, pleaded guilty and requested an immediate sentence. The prosecutor fulfilled his promise by recommending leniency for both defendants. The Court set the

sentencing for the following Monday, July 18, 1960. On that date, the fourth day after the robbery, the Judge sentenced each defendant to 25 years imprisonment.

The Constitutional right to counsel attaches at all "critical stages" of the proceedings and is not satisfied by an appointment at a time or under circumstances that preclude the effective aid of counsel. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). A perfunctory appointment and appearance of an attorney does not satisfy the Constitutional requirement that an accused be afforded the right to counsel. Turner v. State of Maryland, 303 F.2d 507 (4 Cir. 1962); Martin v. Peyton, 365 F.2d 549 (4 Cir. 1966); Jones v. Cunningham, 313 F.2d 347 (4 Cir. 1963). The negotiation of a plea of guilty with a defendant in the absence of counsel deprives a defendant of counsel when he needs counsel most. Anderson v. North Carolina, 221 F.Supp. 930, 935 (D.N.C.1963); Shupe v. Sigler, 230 F.Supp. 601 (D.Neb.1964).

While petitioner was without counsel the prosecutor came to petitioner's cell and bargained for a guilty plea. The prosecutor threatened petitioner and his codefendant with a life sentence under the mandatory provisions of Oregon law if they were found guilty. The prosecutor also added the specter of Federal prosecution and offered to recommend leniency if they entered guilty pleas in the State Court. He injected urgency into the bargaining by informing petitioner and his codefendant that Federal authorities planned to take them into custody on the following day and by arranging for an after-hours court session to receive their pleas. Finally, the prosecutor arranged for the presence of one attorney to represent both defendants, although he knew that their defenses might conflict because of petitioner's earlier assertion that he had been kidnapped by Harris.

The critical stage in these proceedings occurred during the bargaining with the prosecutor while petitioner was without counsel and when petitioner made his decision to plead guilty. The appointment of counsel after the successful negotiation of the guilty plea and minutes before its entry was ineffective, and did not give petitioner the representation required by the Constitution. Appointed counsel could not have reviewed the facts of the crime, the possible defenses or the hazards of a trial, nor could he have evaluated the bargain offered by the prosecutor. For all practical purposes, the petitioner entered his plea of guilty without advice of counsel.

Although the right to counsel can be waived, the trial judge must insure that the accused did so intelligently and voluntarily. Waiver of counsel cannot be presumed from a silent record. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

There is nothing in the record to suggest that petitioner waived counsel. On the contrary, the fact that the prosecutor arranged for counsel's presence in anticipation of the appointment of counsel shows that a waiver of counsel was not intended, notwithstanding the prosecutor's later vague recollection to the contrary. The record shows that nothing was done to insure that petitioner's plea was intelligently and voluntarily entered.

I find that petitioner was denied the effective assistance of counsel at a critical stage in the prosecution and that all of the proceedings have been tainted by this deficiency. The plea of guilty, the waiver of indictment, and the sentence are set aside.

This opinion shall constitute findings of fact and conclusions of law under Rule 52(a), Federal Rules of Civil Procedure.